UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUTGERS, THE STATE UNIVERSITY, | |
| Plaintiff, | |
| | Civil Action No. 12-7898 (MAS) (LHG) |
| v. | |
| | **MEMORANDUM OPINION** |
| AMERICAN ATHLETIC CONFERENCE, | |
| Defendant. | |

**SHIPP, District Judge**

The Big East Conference, which subsequently changed its name to the American Athletic Conference ("Conference," "The Big East" or "Defendant") moved to dismiss, or in the alternative, to transfer this case to the District of Rhode Island. (Def.'s Mot., ECF No. 14-1.) Rutgers, the State University of New Jersey ("Plaintiff" or "Rutgers") opposed and cross-moved to amend. (Pl.'s Opp'n, ECF No. 18-1.) Defendant filed a Reply. (Def.'s Reply, ECF No. 19.) Plaintiff subsequently filed correspondence advising the Court of additional case law post-dating its brief. (ECF No. 20.) Defendant filed a response. (ECF No. 21-1.) Thereafter, Plaintiff moved to compel the Defendant to enter a deposit with the Court. (ECF No. 24.) Defendant opposed. (ECF No. 25.) Plaintiff filed a Reply. (ECF No. 26.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendant's Motion to Dismiss is denied and its alternative request to transfer is granted. Plaintiff's cross-motion to amend and motion to enter a deposit with the Court are administratively terminated as moot.

## I. Background

This action arises from a dispute regarding the Parties' rights and obligations under the Conference's Bylaws. (*See* Def.'s Mot. 1.)

### A. Allegations in the Complaint

The Complaint provides the history of Rutgers's membership in the Conference and contains a number of assertions regarding the Conference's alleged selective treatment of various withdrawing members. According to the Complaint, Rutgers joined the Conference as a full member in 1995. (Compl. ¶ 9.) The rights and obligations of the Conference members are governed by the Bylaws, which were amended several times, including an October 17, 2011 amendment that provided for a $10 million Withdrawal Fee for a football school. (*Id.* ¶¶ 34-35.) However, the Withdrawal Fee provision was linked to an automatic qualifier designation.[1] Plaintiff's Complaint alleges that the elimination of the automatic qualifier designation resulted in a Withdrawal Fee reduction to $5 million.[2] (*Id.* ¶¶ 37-39.) As such, Plaintiff alleges that as of

---

[1] Plaintiff's opposition explains that "an 'automatic qualifier conference[]' mean[s] that the winner of The Big East football conference automatically qualified to play in a [Bowl Championship Series ("BCS")] game." (Pl.'s Opp'n 5.) Plaintiff alleges that on June 26, 2012, the BCS announced that the format would be changed "to a four-team playoff without automatic qualifier conferences." (*Id.*)

[2] The Complaint, at paragraph 36, quotes the following language of the Bylaws:

> If the Withdrawing Member is a Division I-A School or a Football Affiliate and delivers a Withdrawal Notice on or after the date on which either or both the United States Naval Academy and/or the United States Air Force Academy enters into a written commitment with the Conference to join the Conference as either a Division I-A School or a Football Affiliate, such Withdrawing Member must pay a Withdrawal Fee to the Conference in an amount equal to ten million dollars ($10,000,000.00); provided that in any fiscal year in which the Conference does not maintain, or is notified by the Bowl Championship Series (or any successor thereto) that at a specified time in the future it will lose, its "automatic qualifier" status for the purpose of the Bowl Championship Series (or any successor thereto), such amount shall instead be equal to five million dollars ($5,000,000.00).

June 26, 2012, it had a vested right to pay a $5 million Withdrawal Fee if it were to leave the Conference. (*Id.* ¶ 39.) Plaintiff further alleges that the Conference has "selectively decided not to enforce its Bylaws with respect to Withdrawing Members as to the 27 months notice provision and/or the Withdrawal Fee." (*Id.* ¶ 24.) For example, Rutgers alleges that the Conference did not require Texas Christian University ("TCU") to pay the entire Withdrawal Fee and did not require Notre Dame, Syracuse, Pittsburgh, TCU or West Virginia University to provide 27 months notice as set forth in the Bylaws. (Compl. ¶¶ 16, 19-20, 23.) Plaintiff additionally alleges that it lost the value of the large crowd a home game against TCU would have drawn. (Compl. ¶ 52.)

The Conference again amended its Bylaws during its November 12-13, 2012 meeting. Paragraphs 41 through 43 of the Complaint allege:

41. On or about September 22, 2012 and in anticipation of the November 12-13, 2012 meeting of Big East Presidents, the Big East circulated proposed amendments to the Bylaws to all Big East Presidents. The Big East also circulated a summary of the proposed amendments, prepared by counsel, which did not include any mention of the change in the Withdrawal Fee, nor did it mention the arbitrary removal from the Bylaws of the modified Withdrawal Fee in the event that the Big East loses its "automatic qualifier" status for the purpose of the Bowl Championship Series.

42. When a vote was called for on November 13, 2012 regarding the proposed amendments to the Bylaws, including the increase of the Withdrawal Fee for football schools from $5 million to $10 million, Rutgers' President was not in attendance and therefore did not vote in favor of the amendments. However, Rutgers' Athletic Director was present, voiced objection to both the procedure and substance of the proposed amendments, but was not allowed to cast a vote in opposition.

43. Upon information and belief, the amendments were adopted by majority vote of the Presidents in attendance.

(*Id.* ¶¶ 41-43.)

Plaintiff's Complaint seeks a declaratory judgment voiding the Bylaws and "permitting Rutgers to withdraw from The Big East prior to July 1, 2015" or, alternatively, "declaring that

3

The Big East has waived Rutgers' obligation to abide by the 27 months notice provision and the requirement of a Withdrawal Fee." (Compl. ¶ 72.) Rutgers also alleges a breach of contract claim for its share of the Conference's alleged collection of approximately $40 million in withdrawal fees and its share of presently uncollected withdrawal fees. (Compl. ¶¶ 83-87.) Rutgers further alleges a breach of contract as it relates to the loss of the TCU game, which Rutgers claims resulted in damages "in the amount of $1.3 million." (Compl. ¶¶ 96-101.)

### B. 2012 Bylaws Provision

The November 2012 Bylaws contain the following forum selection clause provision:

11.01 <u>Forum Selection.</u>

The Conference and the Members consent and agree that any claim a Member or Members may have against the Conference, which relates in any way to or arises out of these Bylaws, shall be submitted to binding arbitration to be held by a single arbitrator approved by the Board by a vote of at least three-fourths of all Directors present and eligible to vote. Such arbitration shall be held in accordance with the Commercial Arbitration Rules of the American Arbitration Association, provided, however, that any such arbitrator shall allow discovery in accordance with the Federal Rules of Civil Procedure. The Board may choose another arbitration procedure by a vote of at least three-fourths of all Directors present and eligible to vote. Any such arbitration shall be held in the city in which the Conference's primary executive offices are located. The decision of the arbitrator shall be final and enforceable against the Conference in a court of competent jurisdiction in the state in which the Conference's primary executive offices are located and shall be binding upon the Member(s) asserting such claim. Each Member also expressly agrees that any such claim against the Conference, to the extent not finally resolved through arbitration, shall be brought in a court of competent jurisdiction in the state in which the Conference's primary executive offices are located. Notwithstanding any provision of this Article 11.01, the commencement of any arbitration by any Member against the Conference in the jurisdiction where the Conference's primary executive offices are located, or the transfer of any action brought in another forum for arbitration in the state in which the Conference's primary executive offices are located, shall be for the limited purposes described above and shall not be deemed to constitute consent to jurisdiction in that state with respect to claims against that Member by the Conference or by other Members.

(Aresco Decl. Ex. A. §11.01, ECF No. 14-2.)

## II. Parties' Positions

According to Defendant, the arbitration provision contained in Section 11.01 of the Bylaws constitutes a valid agreement to arbitrate. (Def.'s Mot. 5) (citing 9 U.S.C. § 2.) Since Section 11.01 of the Bylaws selects Rhode Island as the forum for any litigation to enforce a binding arbitration award, the District of New Jersey cannot compel arbitration. (*Id.* at 6 n.3). Therefore, Defendant requests the Court to dismiss the action without prejudice or, in the alternative, to transfer the case to the District of Rhode Island. (*Id.* at 8.) Plaintiff's Opposition and Defendant's Reply positions are set forth in more detail below.

### A. Plaintiff's Position

Plaintiff asserts that it "never entered into a valid arbitration agreement." (Pl.'s Opp'n 17.) Plaintiff joined the Conference in 1991 and became an all-sports member of the Conference in 1995 and "[f]rom the moment of its inception, The Big East's governance rules never included a forum selection clause." (*Id.* at 18-19.) Plaintiff argues that e-mail correspondence dated September 27, 2012 to the Conference Presidents and their administrative assistants reflected, for the first time, a forum selection clause. (*Id.* at 7-8.) According to Plaintiff, The Big East amended its Bylaws to include the arbitration requirement on November 13, 2012, a week prior to Rutgers's Notice of Withdrawal from the Conference. (*Id.* at 19.) Rutgers's President failed to attend the November 13, 2012 meeting and, therefore, could not vote. (*Id.*) Rutgers alleges, under this factual scenario, that the imposition of the forum selection clause is tantamount to the deprivation of a vested right. (*Id.* at 23-24.)

Plaintiff also argues that the arbitration provision is procedurally and substantively unconscionable. (*Id.* at 25-29.) According to Plaintiff, the clause is procedurally unconscionable because "[i]t unilaterally imposed the forum selection clause upon Rutgers, and there was no

5

means by which Rutgers could have avoided its application." (*Id.* at 26.) Plaintiff argues that the arbitration provision is substantively unconscionable because it is one-sided in favor of the Conference, forcing members into arbitration while providing the Conference with the exclusive ability to choose the arbitrators and the rules that will apply. (*Id.* at 27-28.)

Plaintiff also asserts that the claim for breach of contract for loss of the TCU game does not relate in any way to or arise out of the Bylaws. (*Id.* at 29.) Plaintiff argues that the breach of contract count is based on the Conference's failure to compensate it for lost revenue that resulted from rescheduling a home against one team to an away game against another team, which pre-dated the Bylaws. (*Id.* at 30-31.)

Plaintiff further argues that the Rhode Island choice-of-law clause is unenforceable because Plaintiff

> never consented to a forum selection clause of any sort, and any forced addition of a forum selection clause deprives Rutgers of a right that vested under the previous Bylaws to have its litigation against [the Conference] heard in a forum of its choosing. Accordingly, just as Rutgers may not be compelled to have its case heard in arbitration as a result of a forum selection clause to which it never consented, it also may not be forced to have its case heard in another jurisdiction under that same clause.

(*Id.* at 33.)

Finally, Plaintiff argues that if the Court determines that the case should be heard in the District of Rhode Island, the enforceability of the arbitration clause should be determined by the District of Rhode Island. (*Id.* at 34.)

### B. Plaintiff's Certifications in Opposition to Defendant's Motion to Dismiss

Timothy Pernetti ("Pernetti") served as Rutgers's Athletic Director from April 1, 2009 through April 5, 2013, and submitted a Certification in Opposition to Defendant's Motion to Dismiss. (Pernetti Cert., ECF No. 18-4.) Pernetti's Certification includes the history of Rutgers's

6

participation in the Conference from its early participation through its notice of withdrawal. Pernetti's Certification also includes allegations regarding other teams' participation in and withdrawal from the Conference.

According to Pernetti, on September 27, 2012, the Conference's Senior Associate Commissioner for Governance and Compliance sent an e-mail message to the member schools' Presidents and their administrative assistants regarding the November 2012 Annual Fall Meeting. (Pernetti Cert. ¶ 18.) Attachments to the e-mail message included a memorandum "setting forth: a summary of governance changes, draft amended and restated articles of incorporation, and draft amended and restated Bylaws."[3] (*Id.*)

Pernetti attended the Annual Fall Meeting and verbally opposed the proposed changes to the Bylaws with respect to withdrawing members. (*Id.* ¶ 22.) However, Pernetti did not have the authority to vote on behalf of Rutgers. (*Id.* ¶ 19.) Although Rutgers's President had the authority to vote, he did not attend the November 13, 2012 meeting. (*Id.*) A sufficient number of Directors who were present at the Annual Meeting voted to approve the proposed changes to the Bylaws. (*Id.* ¶ 23.) As such, the Bylaws were adopted. (*Id.*)

Plaintiff also submitted several documents in connection with David W. Field's Certification in Opposition to Defendant's Motion to Dismiss, including a copy of the November 13, 2012 Annual Fall Meeting Minutes. (Field Cert., ECF No. 18-6.)

The Joint Fall Meeting Minutes provide:

> There was a general discussion regarding the governance documents and the proposed revisions that were recommended by Gibson Dunn. During this time, Pernetti raised discussion regarding Section 13.02 of the Bylaws with regard to modified withdrawal fee language. He specifically had concerns about football-only members paying a lesser fee if they did not join as scheduled, about the

---

[3] Pernetti included a copy of the memorandum as Exhibit D to his Certification. (ECF No. 18-5.)

unknown with regard to future Conference revenue and because the Conference's BCS standing had changed.

(Field Cert. Ex. C ¶ 6, ECF No. 18-7.)

### C. Defendant's Position

Defendant argues that "the formal bylaws of an organization are to be construed as a contractual agreement between the organization and its members." (Def.'s Reply 4) (quoting *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361-62 (D.C. 2005)). Since the Bylaws were properly adopted at the November 13, 2012 meeting, the mandatory arbitration provision constitutes an agreement to arbitrate. (*Id.* at 4-5.)

Defendant also asserts that Plaintiff did not identify a "'material or vested' contractual right allegedly infringed by the mandatory arbitration provision." (*Id.* at 5.) According to Defendant, the arbitration provision does not take away a vested, contractual right but, instead, requires Rutgers to arbitrate any claims against the Conference. (*Id.* at 6.)

Defendant further argues that Rutgers has not demonstrated that the arbitration provision is procedurally or substantively unconscionable. The Conference gave Rutgers's President 45 days' written notice prior to the November 13, 2012 meeting. (*Id.* at 7-8.) In addition, Rutgers knew that Bylaw amendments could be adopted by a sufficient vote of Directors and would become effective immediately upon adoption. (*Id.* at 8-9.) As such, Defendant asserts that Rutgers's procedural unconscionability argument fails. (*Id.* at 9.)

Defendant asserts that Rutgers's substantive unconscionability argument also fails. (*Id.*) According to Defendant, Rutgers did not point to any limitation on rights or remedies resulting from arbitration of its claims. (*Id.*) Additionally, Defendant states that an arbitration clause that allows one party to select the arbitrator is not unusual or unconscionable. (*Id.* at 10.) The Bylaws

8

also provide for arbitration "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (*Id.*)

Finally, Defendant argues that the breach of contract claim must be arbitrated. (*Id.* at 11.) Defendant asserts that Rutgers does not allege the existence of any contract other than the Bylaws, stating:

> The Bylaws provide that "any claim" by a Member against the Conference "which relates in any way to or arises out of" the Bylaws must be arbitrated. This language must be interpreted broadly. *See Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000); *Medtronic AVE, Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3d Cir. 2004) ("[A] clause providing for the arbitration of matters 'arising from' an agreement overwhelmingly suggests that a given dispute is arbitrable.").

(*Id.* at 12.)

Therefore, Defendant urges the Court to dismiss the action without prejudice or transfer it to the United States District Court for the District of Rhode Island. (*Id.* at 14.)

### III. Discussion

In considering the propriety of arbitration, a court must make "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). In addition, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal citation and quotation omitted).

In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, the Third Circuit clarified the standards to be applied to motions to compel arbitration. 716 F.3d 764 (3d Cir. 2013). The facts of *Guidotti* and the reasoning of the *Guidotti* Court are particularly instructive here. In *Guidotti*, the plaintiff asserted that she did not agree to arbitrate. *Id.* at 777. While the *Guidotti* plaintiff received several documents in connection with a "debt reduction program" she entered into, she

allegedly did not receive the document with the arbitration clause until several weeks after contracting with the defendants. *Id.* at 768-69. Based on its review of several documents attached to the defendants' motion to compel arbitration, the District Court found that "the record [was] sufficient to establish that [the plaintiff] did not receive the [document containing the arbitration clause] in her initial collection of documents sent via e-mail." *Id.* at 770. Therefore, "[w]ithout requiring or permitting discovery on the matter, the [District] Court held that [the plaintiff] 'd[id] not appear to have had knowledge of and assent[] to the incorporated terms'" and denied defendants' motion to compel arbitration. *Id.* at 770-71. According to the Third Circuit:

> The dispositive dispute before the District Court was whether the Account Agreement was included in the initial package of documents emailed to [the plaintiff] in September 2009 . . . . If the facts are as the Appellants claim, then presumably [the plaintiff] had knowledge of and assented to the arbitration clause contained in the Account Agreement at the time she signed and submitted the [documents]. If her version is true, then she can credibly argue that she did not assent to arbitration and is not bound by that provision.

*Id.* at 769.

Following a comprehensive discussion, the *Guidotti* Court summarized the applicable standards as follows:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776 (internal citations and quotations omitted).

10

The *Guidotti* plaintiff alleged that the defendants failed to supply the agreement that contained the arbitration provision until several weeks after she contracted with the defendants. *Id.* at 777. In addition, she responded with sufficient additional facts to place the agreement to arbitrate at issue. *Id.* at 777-79. Therefore, the Court found that the plaintiff "came forth with enough evidence in response to the Appellants' arbitration motion to trigger . . . the summary judgment standard." *Id.* at 779.

In contrast, Plaintiff in the present case failed to trigger the summary judgment standard. The Complaint and the Bylaws relied upon in the Complaint are clear regarding the agreement to arbitrate. According to the Complaint, the Conference amended its Bylaws during its November 13, 2012 meeting. The Conference circulated the proposed amendments to The Big East Presidents on September 22, 2012, well in advance of the meeting. The Conference also circulated a summary of the proposed amendments prepared by counsel prior to the meeting. The Complaint alleges that a majority of the Presidents approved the Bylaws and that they took effect immediately. Here, it is clear from a review of the Complaint and the Bylaws that Plaintiff's claims are subject to an enforceable forum selection clause.

Moreover, Plaintiff's Certifications and supporting documentation only lend support to Defendant's arguments. For instance, Pernetti's Certification confirms that the Conference provided the Presidents with advanced notice of the proposed revisions to the Bylaws. Furthermore, the minutes from the Fall Meeting reflect that all of the Presidents in attendance approved the revisions to the Bylaws. Unlike *Guidotti*, where the plaintiff responded with additional facts sufficient to place the agreement to arbitrate in issue such that the parties were entitled to arbitrability-related discovery, Plaintiff here failed to respond with additional facts

11

sufficient to place the agreement to arbitrate in issue such that the Parties should be entitled to discovery on the question of arbitrability.

In addition, the Court is not persuaded by Plaintiff's argument that the breach of contract claim as it relates to the loss of a game against TCU should be spared from arbitrability. Plaintiff acknowledges that the "forum selection clause makes arbitration the mechanism for resolving 'any claim a Member or Members may have against the Conference, which relates in any way to or arises out of these Bylaws.'" (Pl.'s Opp'n 29.) Plaintiff, however, argues that its right to revenue from the Conference as a result of the loss of the TCU game is independent from the Bylaws. The Court disagrees. While Plaintiff argues that its breach of contract claim related to the loss of the TCU game is distinct from its revenue sharing claim based on past and future withdrawal fees, both at a minimum are related to the Bylaws. The arbitrability of the TCU claim is bolstered by the broad construction afforded to the expansive language of the controlling arbitration clause covering "any claim" "which relates in any way to or arises out of these Bylaws." (Pl.'s Opp'n 8); *see Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) ("In construing the scope of an arbitration clause, courts generally operate under a pronounced 'presumption of arbitrability.'").

The Court also finds Plaintiff's unconscionability arguments unavailing. As it relates to procedural unconscionability, "[a] contract is procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision[.]'" *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 235 (3d Cir. 2012) (internal citation omitted). Plaintiff's asserted lack of meaningful choice in the present case is not persuasive because the arbitration provision resulted from the amendment of the Bylaws. Notably, Plaintiff referenced *Meshel v. Ohev Sholom Talmud Torah* for the proposition that "the formal bylaws of an

organization are to be construed as a contractual agreement between the organization and its members." (Pl.'s Opp'n 19-20) (quoting *Meshel*, 869 A.2d at 361). Defendant provided a persuasive discussion of *Meshel*, stating that:

> In *Meshel*, the "corporate bylaws of an Orthodox Jewish congregation organized under District of Columbia law provide[d] that any claim of a member against the congregation that cannot be amicably resolved shall be referred to a 'Ben Din' of Orthodox Jewish rabbis for a binding decision according to Jewish law." 869 A.2d at 346. The District of Columbia Court of Appeals (the highest court) held that, as a matter of law, this provision obligated congregation members to pursue claims against the congregation in arbitration, not in court. *See id.* at 361-62.
>
> The mandatory arbitration provision in the Conference Bylaws is, if anything, even clearer than the provision in *Meshel*, which did not contain the word "arbitration." It follows *a fortiori* that the Conference Bylaws' mandatory arbitration provision constitutes, as a matter of law, an agreement to arbitrate.

(Def.'s Reply 4-5.)

Here, the Conference Bylaws constituted a contractual agreement between the Parties and contained an explicit amendment provision. Section 15.01, <u>Procedure for Amendment of Bylaws</u>, provided:

> Amendments to these Bylaws shall be adopted by the Board by a vote of at least three-fourths of all Directors present and eligible to vote. An amendment to these Bylaws shall become effective immediately upon adoption unless otherwise specified in the amendment and it shall not be necessary for the Members to sign any amendment to these Bylaws in order for such amendment to be effective.

(Pernetti Cert. Ex. B, ECF No. 18-5.)

Additionally, Rutgers received ample notice of the November 12-13 meeting and the proposed changes to the Bylaws. This further undermines Plaintiff's argument of procedural unconscionability. As such, Rutgers's argument as to procedural unconscionability fails.

Plaintiff's allegations of substantive unconscionability are similarly unpersuasive. "A contract or provision is substantively unconscionable where it 'unreasonably favors the party asserting it.'" *Quilloin*, 673 F.3d at 230 (internal citation omitted). Plaintiff did not demonstrate

13

that the forum selection provision unreasonably favors Defendant. Rather, the merits of Plaintiff's claims are simply subject to the agreed upon, contractually determined, venue of arbitration. The Court is also not persuaded by Plaintiff's argument that it has a vested right to its preferred choice of forum. While Plaintiff cited case law for the proposition that Bylaw revisions cannot strip away a vested right, Plaintiff failed to cite a single case in which a court held that the amendment of bylaws to include an arbitration provision constitutes the deprivation of a vested right.

The Court finds that the Bylaws contain a valid forum selection clause. Therefore, it must next determine the proper relief to grant since a district court may not compel arbitration outside the district in which it sits. *Shaffer v. Graybill*, 68 F. App'x 374, 377 (3d Cir. 2003) (citing 9 U.S.C. § 4). Defendant requests the Court to dismiss the action without prejudice or, in the alternative, transfer the action to the District of Rhode Island. The Court finds that Defendant's alternative requested relief is appropriate.

A forum selection clause is entitled to substantial consideration. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). Here, Plaintiff argues that "just as Rutgers may not be compelled to have its case heard in arbitration as a result of a forum selection clause to which it never consented, it also may not be forced to have its case heard in another jurisdiction under that same clause." (Pl.'s Opp'n 33.) The Court previously found Plaintiff's arguments unavailing. In addition, Plaintiff did not set forth any other factors that would overcome the Rhode Island forum presumption. A transfer to Rhode Island is particularly appropriate under the facts of the present case because this Court does not have the authority to compel arbitration under 9 U.S.C. § 4. The Court, therefore, will transfer venue to the District of Rhode Island, where Defendant may file a motion to compel arbitration.

**IV.** **<u>Conclusion</u>**

For the reasons stated above, Defendant's Motion to Dismiss is denied. Defendant's alternative request to transfer venue to the District of Rhode Island is granted. Plaintiff's cross-motion to amend and motion to compel Defendant to enter a deposit with the Court are administratively terminated as moot. An Order consistent with this Opinion shall be issued.

                                                  s/ Michael A. Shipp
                                                  **MICHAEL A. SHIPP**
                                                  **UNITED STATES DISTRICT JUDGE**

<u>Dated:</u>        October 31, 2013